**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOYCE CARROLL | : | |
| 34 Marigold Circle | : | |
| Levittown, PA 19054 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.:_____ |
| | : | |
| v. | : | |
| | : | |
| GENTELL, LLC d/b/a GENTELL | : | **JURY TRIAL DEMANDED** |
| 1000 Floral Vale Blvd, Suite 400 | : | |
| Yardley, PA 19067 | : | |
|         and | : | |
| WOUND CARE CONCEPTS, LLC | : | |
| 1000 Floral Vale Blvd, Suite 400 | : | |
| Yardley, PA 19067 | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.      This action has been initiated by Joyce Carroll ("Plaintiff," unless indicated otherwise) against Gentell, LLC d/b/a Gentell ("Defendant Gentell") and Wound Care Concepts ("Defendant WCC"), collectively "Defendants", for violations of the Americans with Disabilities Act, as amended ("ADA" – 42 USC §§ 12101 *et. seq.*), the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621 *et. seq.*), Title VII of the Civil Rights Act of 1964 ("Title VII – 42 U.S.C. §§ 2000d *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA"). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2.      This action is being initiated pursuant to federal laws and therefore, the United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. There lies supplemental jurisdiction over Plaintiff's state-law claims (such as pursued under the PHRA) because they arise out of the same nucleus of operative facts underlying Plaintiff's federal claims asserted herein.

3.      This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5.      Venue is further appropriate in this District as Defendants employed Plaintiff in this District and because the actions and/or omissions underlying this lawsuit occurred in this District.

6.      Plaintiff is proceeding herein under the ADA, ADEA, and Title VII and has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and by filing the instant lawsuit within ninety (90) days of receiving a right to sue letter from the EEOC. She has also properly exhausted administrative remedies to proceed under the PHRA.

**PARTIES**

7.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8.     Plaintiff is an adult individual, with an address as set forth in the caption.

9.     Defendants develop, manufacture, and distribute wound management and skin protection products for hospitals, hospices, nursing homes, and home health agencies.

10.     Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single/integrated and/or joint employer for purposes of the instant action.

11.     At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

12.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13.     Plaintiff is a 59-year-old woman.

14.     Plaintiff was hired by Defendants effective on or about August 17, 2020; and in total, she was employed by Defendants for approximately 4.5 years.

15.     Plaintiff was a full-time employee until being terminated effective on or about December 9, 2024.

16.    For nearly all of her tenure, Plaintiff worked in one of Respondents' warehouses (within Bristol, Pennsylvania) as a laborer or machine operator.

17.    In or about April 2024, Plaintiff voluntarily transitioned to the role of Delivery Driver and Customer Service Representative.

18.    In or about July 2024, Plaintiff was assigned to regularly drive from Pennsylvania to New York (and to drive within New York City – "NYC").

19.    Plaintiff has a history of suffering from panic, anxiety, debilitating migraines, and depression.

20.    These aforesaid disabilities, at times, substantially limit Plaintiff's abilities to perform daily life functions such as thinking, concentrating, working, and breathing.

21.    The role of driving and having to work within NYC was significantly exacerbating her disabilities.

22.    Plaintiff also has a history of other health problems, including treatment for cataracts and vision problems.

23.    There were many contributing factors but suffice it to say the assignment within NYC was medically problematic at the time.

24.    At all times relevant, Defendants' management, including her supervisor Roger Price ("Price") (Director of Warehousing and Distribution) knew that driving to and in NYC was exacerbating Plaintiff's disabilities as Plaintiff communicated the same to him prior to the commencement of her position as a Driver. In fact, Price was aware of Plaintiff's concerns about driving to NYC before she even did so for the first time.

25. Price didn't care about Plaintiff or how she was impacted and would say things like: "Do you have a license?" "Do you know how to drive?" "Then drive" "If you do not drive, you do not have a job." Price was just point-blank nasty to Plaintiff.

26. On or about December 4, 2024, Plaintiff provided a medical note to Johanna Goodman ("Goodman"), a HR Coordinator, identifying that she was suffering from an "acute exacerbation of anxiety/depression."

27. The aforesaid medical note indicated Plaintiff could work in any capacity "other than driving duties."

28. In the weeks leading up to December 4, 2024, Plaintiff had already been discussing a potential medical accommodation with Defendants' human resources ("HR") while explaining that she was having health complications and struggling with the duties of being assigned to NYC driving.

29. Per the medical note Plaintiff provided on or about December 4, 2024, her medical conditions would be reassessed "in 3 months."

30. Plaintiff was terminated within just a few weeks of discussing her health and NYC driving and within 5 days of providing medical documentation seeking an accommodation to be excused from driving duties.

31. Just two (2) days preceding her termination notification, Plaintiff was informed that she could be accommodated Goodman.

32. Plaintiff was able to resume any number of roles in a warehouse setting (just as she had worked during the first approximate 4 years of her employment). It was not uncommon for employees to transition or transfer to a variety of roles, and Plaintiff was more experienced than much of Defendants' staff.

33. Plaintiff was a very experienced laborer and machine operator in Defendants' warehouse.

34. Goodman shared with Plaintiff that she discussed Plaintiff's medical concerns and need to adjust her role back to the warehouse with her management, including Price.

35. As a Driver, Plaintiff also reported to John Lynch ("Lynch"), the Bristol Distribution Center Manager and Amanda O'Connell ("O'Connell"), a lead and supervisor of Part B (a particular area of the warehouse). Kevin Quilty ("Quilty") was an Executive Vice President of Defendants.

36. Plaintiff's last day of actual driving in NYC before she was supposed to be medically accommodated was December 5, 2024 (a day after she provided medical accommodation paperwork).

37. After December 5, 2024, Plaintiff was supposed to be reassigned to Defendants' warehouse.

38. It appeared to Plaintiff that Price was very upset with her for ceasing her driving responsibilities notwithstanding: (a) it was for disability-related reasons; and (b) that she could easily be accommodated (as assured by Goodman).

39. When Plaintiff had discussed her concerns regularly with Price directly in the 1-2 months leading up to her termination, he was continually abusive, demeaning, and told Plaintiff she performed a critical job.

40. Drivers, warehouse laborers, and management often used profanity or were loud. It was common, known, and accepted in the environment.

41. Quilty for example often yelled, used the work "fuck," or otherwise communicated with profanity. He is in executive leadership.

6

42.   Naturally, employees felt it was fine and acceptable (such as Plaintiff).

43.   O'Connell swore and used the phrase "fuck," and Plaintiff just felt her comments were humorous or part of the job. Plaintiff was not offended by anything she did or said (nor other swearing or making vulgar comments).

44.   Plaintiff's views may have been different if she were working in some type of corporate environment with cubicles.

45.   And Plaintiff at times used profanity. This is just context surrounding the ultimate rationale given to Plaintiff for her termination from employment.

46.   On or about (Friday) December 6, 2024, Plaintiff was directed by Lilia Marshe (HR Director) to attend an "important meeting" at Defendants' "head office" in "Yardley on Monday December 9 at 9:00 am."

47.   On December 9, 2024, Plaintiff was informed she was being terminated for making disparaging comments about Price.

48.   Plaintiff's termination was memorialized by letter dated December 9, 2024, wherein the letter identified she was subject to an "involuntary termination" for violating "company policies." This termination letter was signed by Dina Pescatore (VP of Human Resources).

49.   Attached to Plaintiff's termination letter was a sheet with a list of "major offenses" under Defendants' code of conduct. On that sheet, Defendants highlighted "The use of profane of abusive language" indicating this was the reason for Plaintiff's termination.

50.   Within a few weeks prior to Plaintiff being terminated, she had complained to O'Connell and Lynch. Plaintiff expressed her concerns about the NYC issues impacting her health, and Plaintiff does recall saying something negative about Price.

51. It was so common to talk with such profanity that both Lynch and O'Connell laughed and made other comments. They didn't discipline Plaintiff or suggest she did anything wrong.

52. In the aforesaid conversation with O'Connell and Lynch, Plaintiff was complaining about mistreatment by Price and nobody from Defendants investigated or cared about her concerns of mistreatment.

53. Plaintiff was never counseled, warned, or disciplined in 4.5 years, let alone in the weeks preceding her termination from employment.

54. Plaintiff was then abruptly terminated after following up with medical documentation for a job reassignment need for something that seemed innocuous and had occurred well in advance of such medical documentation being provided.

55. Younger, male employees who were not disabled engaged in what would be "major offenses" under Defendants' code of conduct in the workplace but were not terminated for the same. For example, but not intended to be an exhaustive list:

    a. Mike Morris ("Morris") sexually harassed Defendants' Quality Controller. He was moved to a different area after his sexual harassment was determined to have occurred;

    b. Robert Williams ("Williams") was an employee who argued and yelled, often using profanity toward the supervisor on the floor in the presence of others. This occurred on several occasions. Williams was simply moved to a different location; and

c. Greg Kashow ("Kashow") was accused of threatening to kill another employee. Regardless of whether it occurred, Kashow was only demoted and not terminated.

56. But Plaintiff, an older female with disabilities, was terminated, unlike others, without warning, discipline, or any interactive discussion.

57. Further, in administrative proceedings before the EEOC, Defendants claimed the reason for Plaintiff's separation was insubordination to Price, rather than because of the use of profanity or disparaging comments

**COUNT I**
**Violations of the ADA**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Failure to Accommodate; and [3] Retaliation)**

58. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

60. Plaintiff kept Defendants' management and HR informed of her serious medical conditions and need for medical treatment and other accommodations.

61. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants; however, Plaintiff did require some reasonable medical accommodations at times.

62. Plaintiff requested reasonable accommodations from Defendants including but not limited to being moved back to a position in the warehouse setting rather than in the Driver position.

63. Plaintiff was subjected to discrimination through disparate treatment and

demeaning and/or derogatory treatment because of her aforesaid health conditions and requested accommodations.

64.     Plaintiff was abruptly terminated under false and pretextual circumstances as discussed herein on or about December 9, 2024.

65.     Defendants failed to properly accommodate Plaintiff by requiring her to work as a Driver despite her doctor's recommendation and failing to place her back in a warehouse position as she had been in for the first four years of her employment.

66.     Plaintiff believes and therefore avers that she was subjected to discrimination and retaliation because of (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations (discussed *supra*); and (4) Defendants' failure to properly accommodate Plaintiff's health conditions (set forth *supra*).

67.     Plaintiff also believes and therefore avers that her disabilities were motivating and/or determinative factors in the termination of her employment by Defendants.

68.     These actions as aforesaid constitute violations of the ADA.

## COUNT II
### Age Discrimination in Employment Act (ADEA)
### (Age Discrimination)

69.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70.     During Plaintiff's employment with Defendants, she was subjected to discrimination through disparate treatment because of her age.

71.     Defendants first stated reason for Plaintiff's termination was the use of profanity and/or making disparaging remarks.

72.    Plaintiff's much younger colleagues would frequently use profane language, threaten to kill other employees, and/or sexually harass other employees. This behavior was at times directed to supervisors or management.

73.    Yet these younger employees were barely disciplined let alone terminated for this behavior.

74.    Plaintiff believes and therefore avers that she was terminated from her position with Defendants because of her advanced age.

75.    These actions constitute unlawful age discrimination under the ADEA.

**COUNT III**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Sex/Gender Discrimination)**

76.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

77.    During Plaintiff's employment with Defendants, she was subjected to discrimination through disparate treatment because of her sex/gender.

78.    Defendants first stated reason for Plaintiff's termination was the use of profanity and/or making disparaging remarks.

79.    Plaintiff's male colleagues would frequently use profane language, threaten to kill other employees, and/or sexually harass other employees. This behavior was at times directed to supervisors or management.

80.    Yet these male employees were barely disciplined let alone terminated for this behavior.

81.    Plaintiff believes and therefore avers that she was terminated from her position with Defendants because of her sex/gender.

82. These actions constitute unlawful sex/gender discrimination under Title VII.

**COUNT IV**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**

83. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

84. The allegations and claims set forth in Counts I – III of this Complaint also constitute violations of the PHRA, which is interpreted and analyzed in the same manner as federal law(s).

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination or retaliation at the hands of Defendants until the date of verdict;

B. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E.       Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F.       Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: April 21, 2026

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Joyce Carroll | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Gentell, LLC d/b/a Gentell, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                  (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                     (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (x )

| 4/21/2026 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
CARROLL, JOYCE

## DEFENDANTS
GENTELL, LLC D/B/A GENTELL, ET AL.

**(b)** County of Residence of First Listed Plaintiff  Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| | | | | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); Title VII (42USC2000); ADEA (29USC621)

Brief description of cause:
Violations of the ADA, Title VII, ADEA and the PHRA.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE 4/21/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____